**Brooke Anne NIX, Petitioner–Respondent,**

v.

**Jerry Michael NIX, Defendant–Appellant.**

No. 18610.

Missouri Court of Appeals, Southern District, Division One.

Oct. 5, 1993.

Jeffrey P. Dix, Jackson, for defendant-appellant.

No brief filed, for petitioner-respondent.

SHRUM, Judge.

In this dissolution of marriage action, Jerry Michael Nix (Father) appeals from the trial court's award of child custody and its order that he pay the attorney fee of Brooke Anne Nix (Mother). We affirm.

### CHILD CUSTODY ISSUE

This action, aptly described by Father in his brief as a "battle," is particularly tragic because of the three children born of the marriage, the oldest of which was 5 at the time of trial. No jurisprudential purpose would be served by recounting the specific evidence, presented by both parents, on the custody issue.

The action was initiated by Mother's petition for legal separation in which she sought "the care, custody and control of the minor children...." In his original answer Father requested dismissal of Mother's petition, denying Mother's allegations that the marriage was irretrievably broken and that it was in the best interests of the children to be in the care, custody, and control of Mother. In an amended answer, Father averred the marriage was irretrievably broken, and he asked the court to dissolve the marriage and award "the primary care, custody and control" of the children to him.

We quote pertinent portions of the trial court's decree:

> Testimony was presented and after considering the pleadings and evidence given

in support thereof, the Court made the following findings of fact, to wit:

. . . .

That said minor children are presently in the care and custody of [Mother,] and the Court, having considered all relevant factors as set forth in Section 452.375 RSMo, finds that it would be in the best interest of the minor children for the primary care, custody and control of the minor children to be awarded to [Mother] with reasonable rights of visitation to [Father] consistent with this Court's Order.

. . . .

It is therefore ordered, adjudged and decreed by the Court . . . that custody of the minor children of the parties is granted to [Mother] subject to [Father's] reasonable rights of visitation set forth more specifically as follows:

Alternating weekends from 6:00 p.m. on Friday until 6:00 p.m. on Sunday; alternating major holidays as follows: New Year's Day, Memorial Day, Labor Day, and Christmas Eve in odd numbered years and President's Day, Independence Day, Thanksgiving Day, Christmas Day in even numbered years, from 9:00 a.m. to 6:00 p.m.; [Father] shall further have rights of visitation on Father's Day from 9:00 a.m. to 6:00 p.m. if said day does not fall on a scheduled weekend visitation and [Mother] shall have custody of the children on Mother's Day beginning from 9:00 a.m. if said holiday falls on a weekend of [Father's] scheduled visitation; [Father] shall further have two non-consecutive two week periods of temporary custody during the summer months.

It is further ordered, that [Father] shall provide for transportation of the children under the terms of visitation, but that [Father] shall not enter the residence of [Mother] while receiving or delivering the children.

In his first point on appeal, Father contends the trial court erred "in awarding Mother the primary physical custody of the minor children in that the overwhelming, credible evidence showed that the best interest of the minor children would be served by

Father having the primary physical custody of the minor children."

Section 452.375, RSMo Supp.1990, governs this child custody determination. Subsection 1 defines *joint legal custody* and *joint physical custody* as follows, unless the context clearly indicates otherwise:

(1) **"Joint legal custody"** means that the parents share the decision-making rights, responsibilities, and authority relating to the health, education and welfare of the child, and, unless allocated, apportioned, or decreed, the parents shall confer with one another in the exercise of decision-making rights, responsibilities, and authority;

(2) **"Joint physical custody"** means an order awarding each of the parents significant periods of time during which a child resides with or is under the care and supervision of each of the parents. Joint physical custody shall be shared by the parents in such a way as to assure the child of frequent and continuing contact with both parents.

■ Subsection 2 of § 452.375 requires the trial court to make its custody decision "in accordance with the best interests of the child" after considering "all relevant factors." This introductory portion of subsection 2 simply reiterates the longstanding policy of this state that child custody determinations must be based on the welfare and best interests of the child. *See e.g. Lusk v. Lusk,* 28 Mo. 91, 93 (1859); *In re Scarritt,* 76 Mo. 565, 582, 589 (1882). Subsection 2 also sets out a non-exclusive list of factors the court is to consider in making its determination.

Subsection 4 of § 452.375 provides:

Prior to awarding the appropriate custody arrangement in the best interest of the child, the court shall consider each of the following as follows:

(1) Joint custody to both parents, which shall not be denied solely for the reason that one parent opposes a joint custody award;

(2) Sole custody to either parent; or

(3) Third party custody or visitation. . . .

Subsection 7 of § 452.375 requires, "Any decree providing for joint custody shall in-

clude a specific written plan setting forth the terms of such custody."

■ Based on the definitions of § 452.-375.1 and this court's observations in *Ibrahim v. Ibrahim*, 825 S.W.2d 391, 396[3] (Mo. App.1992), we conclude the court awarded sole legal custody to Mother and joint physical custody to Mother and Father. Our conclusion regarding legal custody is based on the language of the court's decree, "that custody of the minor children of the parties is granted to [Mother]" with exceptions limited to specified "visitation" rights to Father, and the absence from the decree of a specific written joint legal custody plan.

■ Although the children are to reside with Mother and be under her care and supervision most of the time, the decree specifies in writing significant periods of time during which the children are to reside with Father or be under his care and supervision. Thus we characterize the physical custody arrangement as one of joint custody.[1]

We have engaged in this lengthy exposition of our understanding of the trial court decree and the applicable portions of the statute in order that we might better address Father's first point on appeal. Nothing in Father's brief disputes our characterization of the award as one granting sole legal custody to Mother, and Father does not complain of such award. His complaint in Point I, rather, is directed toward what he describes as the trial court's award of "primary physical custody" to Mother.[2]

■ Our review of a dissolution decree is governed by Rule 73.01(c) and the principles enunciated in *Murphy v. Carron*, 536 S.W.2d 30 (Mo.banc 1976). Thus we must affirm the judgment of the trial court unless there is no substantial evidence to support it, unless it is against the weight of the evidence, or unless it erroneously declares or applies the law. *Marriage of Barnes*, 855 S.W.2d at 454[1].

■ The phrase "weight of the evidence" means its weight in probative value, not the quantity or amount of evidence. The weight of the evidence is not determined by mathematics; it depends on its effect in inducing belief. *Marriage of Barnes*, 855 S.W.2d at 454[3]. Appellate courts should exercise the power to set aside a decree or judgment on the ground that it is against the weight of the evidence with caution and with a firm belief that the decree or judgment is wrong. *Murphy*, 536 S.W.2d at 32[2].

■ Under Rule 73.01(c)(2), we give due regard to the trial court's opportunity to judge the credibility of the witnesses. The trial judge may believe or disbelieve all, part, or none of the testimony of any witness, and the court may disbelieve testimony even when uncontradicted. *Marriage of Barnes*, 855 S.W.2d at 454[5].

All fact issues upon which no specific findings are made shall be considered as having been found in accordance with the result reached. Rule 73.01(a)(2); *Marriage of Barnes*, 855 S.W.2d at 454[2].

■ We defer to the trial court's findings on custody matters unless we are convinced the best interests of the child require a different disposition. *Id.* at 454[6].

---

1. The trial court's award is permitted under the statute. *See, e.g., Lipe v. Lipe*, 743 S.W.2d 601, 602–03[2, 3] (Mo.App.1988), in which the court of appeals reversed an award of joint legal custody and affirmed an award of joint physical custody. In *Lipe*, the court relied on § 452.375.3, RSMo 1986, which provided in pertinent part:

   The court may award joint physical custody or joint legal custody, or both, to both parents or sole custody to either parent, or, when the court finds that each parent is unfit or unable, and that it is in the best interest of the child, then to a third party.

   The above quoted portion of § 452.375.3, RSMo 1986, was revised by the General Assembly in 1988 and renumbered as current subsec-

tion 4. *In re Marriage of Barnes*, 855 S.W.2d 451, 454 (Mo.App.1993). We do not believe this revision, or the legislative expression of a preference for joint custody if in the best interests of the child, *see Marriage of Barnes*, 855 S.W.2d at 455[7]; *Margolin v. Margolin*, 796 S.W.2d 38, 49[11] (Mo.App.1990), affect the authority of a trial court to award sole legal custody and joint physical custody where such arrangement is in the best interests of the child.

2. The word *primary* does not appear in § 452.-375, and we take Father's complaint not to be an assertion that the court erred in awarding joint physical custody, but rather that the court's apportionment of periods of physical custody was erroneous.

■ Much of Father's argument is simply a challenge to the credibility of Mother and witnesses who testified on her behalf. The court apparently found Mother's evidence to be credible. Rule 73.01(a)(2); *Marriage of Barnes,* 855 S.W.2d at 454[2]. We defer to the trial court's credibility determinations. *Id.* at 454[5].

■ Father's "weight of the evidence" argument likewise is without merit. The record supports a conclusion that the order of joint physical custody, as apportioned by the trial court, serves the best interests of the children. Although the decree places with Mother those responsibilities embraced by the concept of legal custody, the apportionment of physical custody is reasonably designed to assure the children have "frequent and continuing contact with both parents." § 452.375.1(2). We do not have a firm belief that the trial court's award of joint physical custody, as apportioned, was wrong. *Murphy,* 536 S.W.2d at 32[2].

### ATTORNEY FEES

In the prayer portion of her petition, Mother requested "that she be awarded her attorney fees and costs. . . ." Her petition contains but one factual allegation directly related to attorney fees:

12. That the Petitioner is unemployed and unable to pay her attorney fees and that Respondent is able bodied and employable and better able to pay for Petitioner's attorney fees.

In his original and amended answers Father admitted Mother's paragraph 12 allegation regarding attorney fees.

At trial, the parties presented evidence about their financial circumstances, but Mother offered no evidence regarding her attorney fees. The court divided marital property and marital debt and ordered that Father "pay the attorney's fee of [Mother] in the amount of $1,000. . . ."

■ Father now challenges the attorney fee award on the ground there was no evidence to support it. Relying on *Tepper v. Tepper,* 763 S.W.2d 726 (Mo.App.1989), Father argues that Mother abandoned her prayer for attorney fees by not raising the issue at trial.

■ Missouri courts have historically adhered to the "American rule" that, with certain exceptions, litigants bear the expense of their own attorney fees. Ordinarily, any exceptions fit into one of four categories: recovery of fees pursuant to contract, recovery provided by statute, recovery as an item of damage to a wronged party involved in collateral litigation, and, occasionally, reimbursement when ordered by a court of equity to balance benefits. *Brown v. Mercantile Bank of Poplar Bluff,* 820 S.W.2d 327, 340[22] (Mo.App.1991).

■ A trial court is authorized under § 452.355.1, RSMo Supp.1988, to order one party to pay the other's attorney fees, but the court is required to consider the financial resources of both parties before doing so. Factors other than financial resources also are to be taken into account, and how the factors balance will vary from case to case. A trial court has broad discretion in awarding attorney fees in dissolution cases, and only on a showing of an abuse of that discretion will an appellate court interfere with an attorney fee award. *In re Marriage of McCoy,* 818 S.W.2d 322, 325 (Mo.App.1991).

"The trial court was not required to hear evidence on the extent and value of the legal services rendered, as the judge is considered an expert on that question and can fix that amount without the aid of evidence." *In re Marriage of Haubein,* 726 S.W.2d 433, 437 (Mo.App.1987) (citing *In re Marriage of Brewer,* 592 S.W.2d 529, 536[18] (Mo.App. 1979)).

Father's reliance on *Tepper* is misplaced. The issue in *Tepper* was the propriety of an order *pendente lite* requiring the husband to pay on behalf of the wife $10,000 in attorney fees on account and a $5,000 expert witness fee where there was no evidence in the record to support the award. Here, the trial court heard evidence on the financial circumstances of both parties and exercised its authority as a court of equity and under the

statute to award attorney fees to Mother. We find no abuse of discretion in the award.

We affirm the judgment of the trial court.

PARRISH, C.J., and MONTGOMERY, J., concur.